OPINION OF THE COURT
Saralee Evans, J.
This nonpayment proceeding was initiated against the Fifth Avenue Community Center of Harlem, Inc. (Community Center), and several residential tenants of the building located at 2009-2011 Third Avenue, New York, New York, in the Commercial Part of this court. The Community Center, a not-for-profit organization, entered into a net lease for the entire building with petitioner in 1991. From the commencement of the lease, respondent Community Center rented dwelling units located on the second and third floors of the building to formerly homeless individuals for monthly rentals in the amount of $215 per unit.
Although the commercial store lease provides that the entire building would be used as a group home for adolescents, it is undisputed that the building has never been used by the Community Center for that purpose. Moreover, the Community Center and the residential tenants state that the petitioner has been aware that the building has not been used in the manner agreed to in the lease from its inception in 1991.
For several months in 1993, the Community Center failed to pay rent to the petitioner. The instant proceeding was commenced, and the Community Center and the individual residential tenants appeared. The net lessee Community Center paid petitioner a portion of the arrears, and consented to the entry of a final judgment of possession only. A final judgment of possession was then entered against the net lessee only.[1]
Respondents residential tenants move to dismiss this proceeding on the grounds that the commercial nonpayment petition misstates the status of the building, and fails to allege compliance with multiple dwelling registration requirements.
Respondents residential tenants claim that the building is a multiple dwelling, the second and third floors of which are organized into 12 separate dwelling units. Respondents further allege that each of the units is occupied by an individual *259 or a family unit; that each of the individuals or families is a separate household which resides independently of the others in the building; and that each has exclusive control over its own dwelling unit. The residential tenants allege that they are protected by the Rent Stabilization Law and Code. As a consequence, respondents claim that this proceeding is defective as the petition: fails to state that the building is a multiple dwelling; fails to state that the premises have been registered as such; and improperly states that the premises are exempt from the Rent Stabilization Law (RSL).
In opposing the motion, petitioner alleges that there is no privity between it and the residential tenants, and that, consequently, the residential tenants’ claims to possession— which are subordinate to the claims of the net lessee — ended with the entry of the final judgment against the Community Center.
The court must decide what right, if any, the respondents residential tenants have in this proceeding to assert that the petition is fatally defective and that it therefore must be dismissed.
Respondents residential tenants argue that the building is a multiple dwelling which contains more than five class A units. A class A multiple dwelling is defined as a "multiple dwelling which is occupied * * * for permanent residence purposes.” (Multiple Dwelling Law, art 1, § 4 [8] [a].) Among the types of buildings that fall into this classification are tenements, apartment houses, apartment hotels, studio apartments, "and all other multiple dwellings except class B multiple dwellings.” (Multiple Dwelling Law, art 1, § 4 [8] [a].)
Initially, respondents’ allegation that the subject premises is a class A building that is subject to and protected by the RSL requires the court to examine the building’s certificate of occupancy to determine its classification under the Building Code.[2]
The certificate of occupancy, attached herein as exhibit B to petitioner’s affidavit dated June 29, 1994, indicates that the *260 subject premises is classified by the Buildings Department under category J-l. (Administrative Code of City of NY § 27-238.) Buildings in the J-l category are classified as class B buildings under the Code. Accordingly, the subject premises does not fall into the class A building type. However, that the building is categorized as class B does not mean that it is not subject to the RSL.[3]
A class B multiple dwelling is defined as a "multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals.” Among the types of buildings that fall into this category are hotels, lodging houses, rooming houses, boarding houses, and furnished rooming houses. (Multiple Dwelling Law, art 1, § 4 [9].)
In opposing the motion, the petitioner does not directly address the residential respondents’ specific allegations concerning the residential classification of the premises, except to say that according to the certificate of occupancy, the premises is not a multiple dwelling.
Petitioner argues that it is not required to allege facts in the petition pertaining to the regulatory status of the premises, as the proceeding was commenced in the Commercial Part of the court against a tenant with a commercial lease, and no special allegations are "necessary as with residential tenants.” Petitioner asserts that it entered into a commercial net lease for the building with the Community Center, that it has no lease with the respondents residential tenants and there is no privity between it and the residential tenants. Petitioner thus concludes that the tenants lack standing to assert the alleged deficiencies in the petition, as their rights (if any) derived from those of the net lessee — and ended with entry of the final judgment against the net lessee.
The court does not agree with petitioner that 170 W. 85th St. Tenants Assn. v Cruz (173 AD2d 338 [1st Dept 1991]) is controlling under the particular circumstances before the court. In the Cruz case, the Appellate Division ruled that a subtenant did not have the right to challenge the inadequacy of a predicate notice in a proceeding which was commenced *261 against a prime tenant. The court held that the undertenant had the right only to be named in the petition or to be added as a party during the course of the proceeding. (170 W. 85th St. Tenants Assn. v Cruz, supra, at 339.)
The issue before this court — whether the dwelling units in this building were subject to the RSL prior to the 1991 lease agreement, and, if so, whether the petition is defective because it erroneously claims exemption from the RSL — is distinguishable from the issue in Cruz (supra).
In the case at bar, the respondent residential tenants claim they are being deprived of rights accorded them by statute. If the dwelling units in the subject premises were subject to the RSL as respondents claim, petitioner would not be able to evade its protections by entering into a commercial net lease for the entire building with a not-for-profit group, and then claim the tenant occupants of the stabilized units are under-tenants who may not assert their rights under the RSL.
On the basis of the information before it, however, this court will not decide the rent stabilization claims asserted by the respondents. The information submitted to the court does not enable it to determine whether the subject premises are classified as class A or class B. Moreover, without additional information about the date the individual dwelling units were constructed and the configuration of the units, this court is unable to decide whether the occupants of individual dwelling units located in the building are protected by the RSL and Rent Stabilization Code.
Accordingly, respondents’ motion seeking dismissal of the petition on this ground is denied. As such, this court need not decide the petitioner’s claim that the respondents residential tenants, as undertenants, do not have a right to seek dismissal of this proceeding on the grounds that the petition misstates the regulatory status of the subject premises.
However, that part of respondents’ motion which seeks to dismiss this proceeding because the petitioner has failed to comply with the Multiple Dwelling Law has public policy considerations which transcend questions of the rights of alleged subtenants vis-á-vis the building’s owner. The court may not overlook these considerations merely because the respondent Community Center failed to raise the issue.
Issues of policy that concern public health, safety and welfare may be raised by the residential tenants of the subject premises. This is especially true here where the landlord has *262 known of the residential use of the building from the time he purchased it from the City, and where he knew that it was being used for residential purposes pursuant to the net lease with the Community Center. The court notes that even if the building had been used as a group home for adolescents as the "commercial” lease stated, the petitioner could not evade the registration requirements of the Multiple Dwelling Law. A "multiple dwelling” is defined as "a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other.” (Multiple Dwelling Law, art 1, § 4 [7].)[4] Fireproof buildings used wholly for commercial purposes are excluded from the definition of multiple dwelling. (Multiple Dwelling Law, art 1, § 4 [7].)
Multiple dwellings located within the City of New York are required to be registered with the New York City Department of Housing Preservation and Development (HPD). (Multiple Dwelling Law, art 9, § 325; Administrative Code § 27-2097.) Compliance with the registration requirements of Multiple Dwelling Law § 325 is a condition precedent to commencing a summary proceeding. (Vidod Realty Co. v Calvin, 147 Misc 2d 488 [Civ Ct, Bronx County 1989]; Lipkis v Pikus, 96 Misc 2d 581 [Civ Ct, NY County 1978].)
The purpose of the registration requirements of the Multiple Dwelling Law and the Administrative Code is to " 'discourage landlords who would ignore building restrictions and offer an illegal apartment to an unsuspecting tenant.’ ” (Lipkis v Pikus, supra, at 593.) The Multiple Dwelling Law and Code provisions also protect residential tenants from summary eviction in circumstances where their landlord entered into a commercial lease for residential premises. (Lipkis v Pikus, supra.)
In order to ensure that the public purpose of the law is not circumvented, punitive measures were included "in order to put teeth in the public policy embodied in these laws and thereby ensure compliance. Courts have not hesitated to impose these sanctions.” (Lipkis v Pikus, supra, at 593.) Such punitive measures include preventing a noncomplying owner from collecting rent or recovering possession of the premises. *263 (Blackgold Realty Corp. v Milne, 119 AD2d 512, affd 69 NY2d 719 [1987]; Mandel v Pitkowsky, 102 Misc 2d 478 [App Term, 1st Dept 1979]; Multiple Dwelling Law § 325; Administrative Code § 27-2097.)
The building here is not registered as a multiple dwelling with the HPD. Petitioner claims that registration is not required as the building has never been used as a residential building. However the facts before the court belie that assertion.
The court notes that the certificate of occupancy for the building classifies the second and third floors as Building Code occupancy group J-l.[5] Unrefuted affidavits of several of the respondents contain claims that the individual affiant lived in the building for a period of years, that the affiant has complete dominion over his own dwelling unit, and that the building’s owner is aware of the configuration of the units as he has made repairs in his/her apartment.
As discussed herein, the certificate of occupancy classifies the second and third floors of the subject premises as residential premises. Moreover, it is undisputed that there are more than three separate dwelling spaces located therein which are rented to individuals or to families who are unrelated.[6] The units occupied by the respondents residential tenants do not fall into any of the exemptions to the definition of multiple dwelling which are enumerated in Multiple Dwelling Law, article 1, § 4 (7) or the Administrative Code. Consequently, the premises are required to be registered with the HPD. The petitioner cannot circumvent this requirement by net leasing *264 the entire building pursuant to a commercial lease. (Lipkis v Pikus, 96 Misc 2d, supra, at 593.) This is especially true under the circumstances of this case where the owner, by his actions, ratified the residential tenancies by repairing their dwelling units and discussing rent arrears with them.
Petitioner claims that the City of New York previously owned the building and the City constructed the units on its second and third floors. The City is alleged to have used the units for group home purposes. The purpose for which the units may have been used by the City is not relevant to this proceeding. What is relevant is that the City is exempt from the registration requirements of the Multiple Dwelling Law for buildings that it owns. (Administrative Code § 27-2108.) The petitioner, a private owner, appears to have purchased the building from the City and does not benefit from the City’s exemption.
Paragraph 9 of the petition in this proceeding, which alleges that the premises are not a multiple dwelling, does not include a multiple dwelling registration number, the name or address of a registered managing agent or a telephone number which a tenant could use for repair and service. Petitioner concedes that the building is not registered with HPD as a multiple dwelling. Failure to register the building with HPD and to so plead go to the core of this proceeding. The Appellate Division has ruled that "the failure strictly to comply with the statutes governing summary proceedings deprives the court of jurisdiction and mandates dismissal.” (MSG Pomp Corp. v Doe, 185 AD2d 798, 799 [1st Dept 1992].)
The petitioner has failed to comply with the requirements of RPAPL 741 by misstating the multiple dwelling status of the building. It has not sought to amend the petition to assert that it is now currently registered, and to include the registration number and other required information. Accordingly, the petition is dismissed with respect to the respondents residential tenants.

. Respondent net lessee asserted no defenses to this proceeding except to claim that petitioner’s calculations are wrong. The final judgment was issued on August 2, 1994, but stayed through September 6, 1994 to provide the petitioner time to retain the services of a temporary managing agent to operate the subject building pending the resolution of this proceeding.

. The Building Code has established occupancy groups for classifying buildings that exist in the City. (Administrative Code of City of NY § 27-237.) The Code classifies buildings in a residential occupancy group if families or households live in them, or if they contain sleeping facilities but not dining accommodations. The residential group consists of subcategories J-l, J-2, and J-3. The Code classifies class A buildings under category J-2. (Administrative Code § 27-238.) A building’s classification appears on its certificate of occupancy.

. Accommodations that fall into both class A and class B categories may be protected by the Rent Stabilization Law and Code. However, the sections in the Law and Code that determine which class A and class B multiple dwellings are protected by their provisions state different requirements for such protection.

. The Multiple Dwelling Law defines a " 'dwelling’ ” as "any building or structure or portion thereof which is occupied in whole or in part as the home, residence or sleeping place of one or more human beings.” (Multiple Dwelling Law, art 1, § 4 [4].)

. Article 11 of the Building Code states that occupancy group J is residential. "Buildings and spaces shall be classified in the residential occupancy group when families or households dwell therein * * * Excluded from this group are those buildings and spaces classified under the institutional occupancy group.” (Administrative Code §27-263.) Hotels, motels, lodging houses and rooming houses are included in J-l classification. (Administrative Code § 27-246.)

. The certificate of occupancy for the subject premises which categorizes the second and third floors of the subject premises as residential does not state the number of dwelling units contained on those floors and it does not state that there are no dwelling units on those floors. This imprecise statement of the configuration of the floors is not controlling with regard to the number of dwelling units contained in the building. The tenants’ affidavits allege that there are 12 individual residential units in the building and the petitioner does not refute their allegations. Moreover, the affidavit submitted by the respondent net lessee acknowledges that the tenants have occupied the dwelling units and that the owner has been aware of their tenancies.